UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20644-CR-LENARD

MAGISTRATE JUDGE
O'SULLIVAN

18 U.S.C. § 371
42 U.S.C. § 1320-7b(b)(2)
18 U.S.C. § 2
18 U.S.C. § 982

FILED by _____
SEP 04 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. - MIAMI

Sealed

UNITED STATES OF AMERICA

v.

JOSE CARLOS MORALES,

Defendant.

_____/

**UNDER SEAL**

**INDICTMENT**

The Grand Jury charges that:

**General Allegations**

At all times material to this Indictment:

1.      The Medicare Program ("Medicare") was a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), providing benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was subdivided into multiple parts. Prescription drug coverage was provided through Medicare Part D, which covered the cost of most prescription drugs for

Medicare beneficiaries. Medicare Part D was administered by private insurance plans that are reimbursed through CMS.

3. Medicare beneficiaries can obtain Part D benefits in two ways: (1) by joining a Prescription Drug Plan, which covers only prescription drugs, or (2) by joining a Medicare advantage plan, which covers both prescription drugs and medical services, (collectively, "Part D Plans").

4. Under Part D, a pharmacy can contract with multiple Part D Plans or their Pharmacy Benefit Managers ("PBM"), which provides Medicare Part D coverage. A pharmacy can also submit claims for payment to a Part D Plan with which it does not have a contract. Under either agreement, the pharmacy submits claims for prescriptions filled for Medicare Part D beneficiaries.

5. Most Part D Plans contract with a PBM directly or through a third-party administrator to administer processing and payment of prescription drug claims.

6. Typically, a Medicare beneficiary enrolled in a Medicare Part D Plan obtains their prescription medications from a pharmacy authorized by the Medicare beneficiary's Part D Plan. After filling a Medicare beneficiary's prescription, the pharmacy then submits the prescription drug claim to a Part D plan or PBM for payment under the beneficiary's unique Medicare identification number. Then, the Part D Plan or PBM sends a reimbursement check to the pharmacy or initiates an electronic transfer of funds to the pharmacy's bank account.

7. In Florida, Medicare Part D is administered by Palmetto Government Benefits Administrators, LLC, which pursuant to a contract with the United States Department of Health and Human Services, serves as a contract carrier to receive, adjudicate and pay Medicare Part D claims.

8. A Medicare claim for payment is required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the item or service provided; the cost of the item or service; and the name and unique identification number of the physcan who prescribed or ordered the item of service.

9. An "Assisted Living Facility" or "ALF" means any facility licensed by the Florida Agency for Health Care Administration, whether operated for profit or not, which undertakes through its ownership or management to provide housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who are not relatives of the owner or administrator.

10. Defendant **JOSE CARLOS MORALES**, a resident of Miami-Dade County, was a co-owner and officer of Pharmovisa, Inc. and PharmovisaMD, Inc. (the "Morales Pharmacies").

11. Pharmovisa, Inc., a Florida corporation, was a retail pharmacy and durable medical equipment provider located throughout Miami-Dade County, including at the following addresses: 5855 S.W. 137th Avenue, Miami, Florida 33183 and 2416 West 60th Street, Miami, Florida 33016. Defendant **JOSE CARLOS MORALES** was President of Pharmovisa, Inc.

12. PharmovisaMD, Inc., a Florida corporation, was located in Miami-Dade County, with a principal place of business at 7035 S.W. 87th Avenue, Miami, FL 33173. Defendant **JOSE CARLOS MORALES** was the registered agent and director of PharmovisaMD, Inc.

13. E.N., a resident of Miami-Dade County, was a "marketer" who would pay and cause the payment of kickbacks to ALF owners and operators in exchange for Medicare beneficiary "referrals" to the Morales Pharmacies.

14. B.D., a resident of Miami-Dade County, was the owner of Robyll Care ALF ("Robyll"), which was located at 2610 N.W. 19th Avenue, Miami, Florida 33142.

## COUNT 1
### Conspiracy To Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1. Paragraphs 1 through 14 of the General Allegations Section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or about February 2011, through in or about June 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JOSE CARLOS MORALES,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, including E.N. and B.D., to commit certain offenses against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for **JOSE CARLOS MORALES** and his co-conspirators to unlawfully enrich themselves by paying kickbacks and bribes to ALF owners and operators, in return for beneficiary information which the Morales Pharmacies used to submit claims to Medicare.

4

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **JOSE CARLOS MORALES** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy, included, among others, the following:

4. **JOSE CARLOS MORALES** would pay and cause the payment of kickbacks to ALF owners and operators, including B.D., in exchange for the ALF owners and operators referring Medicare beneficiaries to the Morales Pharmacies.

5. E.N., on behalf of **JOSE CARLOS MORALES**, would pay and offer to pay ALF owners and operators a kickback in the amount of $30 per Medicare beneficiary.

6. The Morales Pharmacies would submit claims to Medicare Part D for items and services on behalf of Medicare beneficiaries referred by the ALF owners and operators.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

7. In or around August 2011, **JOSE CARLOS MORALES** delivered and caused to be delivered a cash kickback to B.D. in exchange for providing Medicare beneficiary information, which **JOSE CARLOS MORALES** used to submit claims to Medicare.

8. On or about August 28, 2011, **JOSE CARLOS MORALES** caused the Morales Pharmacies to submit a claim to Medicare on behalf of Medicare beneficiary E.T. for Seroquel XR in the approximate amount of $456.95.

9. On or about May 25, 2012, **JOSE CARLOS MORALES** caused the Morales Pharmacies to submit a claim to Medicare on behalf of Medicare beneficiary E.T. for Seroquel XR in the approximate amount of $501.95.

10. In or around June 2012, **JOSE CARLOS MORALES** delivered and caused to be delivered a cash kickback to B.D. in exchange for providing Medicare beneficiary information, which **JOSE CARLOS MORALES** used to submit claims to Medicare.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-4
### Payment of Health Care Kickbacks
### (42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2)

1. Paragraphs 1 through 14 of the General Allegations Section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below, the exact dates being unknown to the grand jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **JOSE CARLOS MORALES**, did knowingly and willfully offer and pay remuneration (including any kickback, bribe, or rebate) directly and indirectly, overtly and covertly, in cash or in kind in return for referring an individual to a person for the furnishing and/or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

| COUNT | APPROXIMATE DATE OF KICKBACK | AMOUNT OF KICKBACK |
|---|---|---|
| 2 | August 26, 2011 | $200 |
| 3 | June 11, 2012 | $200 |
| 4 | June 14, 2012 | $200 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2), and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1. The allegations contained in this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **JOSE CARLOS MORALES**, has an interest.

2. Upon conviction of any violation of Title 42, United States Code, Section 1320a-7(b), or any conspiracy to commit such violation, as alleged in Counts 1 through 4 of this Indictment, the defendant shall forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p). Specifically, said substitute property may include the following:

    a. the real property located at 8465 SW 76 Terrace, Miami, Florida 33143;

  b. the real property located at 55 SE 6 Street, Unit 3207, Miami, Florida 33131; and

  c. the real property located at 3983 NE 12 Drive, Homestead, Florida 33033.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL

_____
FOREP

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
ALLAN J. MEDINA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JOSE CARLOS MORALES,

        **Defendant.**
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

- _X_ Miami  ___ Key West
- ___ FTL    ___ WPB   ___ FTP

New Defendant(s)     Yes ___  No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  _Yes_
   List language and/or dialect  _Spanish_

4. This case will take  _7-10_  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days      ___
   - II   6 to 10 days     _X_
   - III  11 to 20 days    ___
   - IV   21 to 60 days    ___
   - V    61 days and over ___

   (Check only one)
   - Petty    ___
   - Minor    ___
   - Misdem.  ___
   - Felony   _X_

6. Has this case been previously filed in this District Court? (Yes or No)  _No_
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No)  _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  ___ Yes  _X_ No

                                 _[signature]_
                                 ALLAN J. MEDINA
                                 DOJ TRIAL ATTORNEY
                                 Court No. A5501748

*Penalty Sheet(s) attached

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Jose Carlos Morales     **Case No:** _____

Count #:          1

                  18 U.S.C. § 371

                  Conspiracy to Pay Health Care Kickbacks

**\*Max Penalty:**    5 years' imprisonment

Counts #:         2 - 4

                  42 U.S.C. § 1320a-7b(b)(2)

                  Payment of Health Care Kickbacks

**\*Max Penalty:**    5 years' imprisonment as to each count

Count #:

_____

_____

**\*Max Penalty:** _____

Count #:

_____

_____

**\*Max Penalty:** _____

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.